IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEONARD FIRTH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-04-0659 |
| | § | |
| DON MCGILL OF WEST | § | |
| HOUSTON, LTD. F/K/A DON | § | |
| MCGILL TOYOTA, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court are Plaintiff's Motion for Award of Liquidated Damages as Allowed Under the FMLA (Instrument No. 82); Motion for Reinstatement or, in the alternative, Front Pay (Instrument No. 83); Motion for Entry of Judgment, Post Judgment Interest, and Motion for Award of Attorney's Fees (Instrument No. 81); and Bill of Costs (Instrument No. 84). After considering the motions, submissions, and applicable law, the Court determines that the Motion for Award of Liquidated Damages should be granted; the Motion for Reinstatement should be denied; the Motion for Entry of Judgment, Post Judgment Interest and Motion for Award of Attorneys' Fees should be granted; and the Bill of Costs should be granted in part and denied in part.

BACKGROUND

This case arises under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*  Plaintiff Leonard Firth ("Firth") worked as a private pilot for Defendant Don McGill of West Houston, Ltd. f/k/a Don McGill Toyota, Inc. ("DMWH") for about five years when he was terminated a couple of weeks after returning to work from sick leave.  On January 20, 2006, a jury returned a verdict in favor of Firth on his FMLA retaliation claim, awarding him $96,916 damages for lost wages and benefits.  On January 30, 2006, Firth filed four post-trial motions.  The Court will consider each motion in turn.

LAW & ANALYSIS

A.  Liquidated Damages

In the instant case, Firth argues that pursuant to the FMLA, he is entitled to liquidated damages of $96,916–the amount of lost wages the jury awarded him–plus interest.  In response, DMWH argues it has established a valid defense to such an award.  Generally, an employer who violates the FMLA is liable to the affected employee for liquidated damages equal to the amount of compensatory damages and interest.  29 U.S.C. § 2617(a)(1)(A)(iii) (2000).  However, courts have discretion to reduce the amount of liability incurred if the employer establishes that it had acted both

2

in good faith and with reasonable grounds for believing its conduct did not violate the FMLA.[1]  *Id.*

As other courts have noted, the FMLA does not define good faith. *See, e.g., Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999); *Jordan v. United States Postal Serv.*, 379 F.3d 1196, 1201-02 (10th Cir. 2004); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 407 (6th Cir. 2003). Therefore, courts that have had to interpret the FMLA's liquidated damages provision have sought guidance from the Fair Labor Standards Act of 1938 ("FLSA"), which also provides for liquidated damages. *See* 29 U.S.C. §§ 201 *et seq.* (2000). Accordingly, this Court considers cases discussing liquidated damages in the context of both the FMLA and the FLSA in reaching its determination in the captioned matter. *See Nero*, 167 F.3d at 928; *Arban*, 345 F.3d at 407-08.

A strong presumption exists in favor of liquidated damages, which effectively results in a doubling of any award of lost wages.[2]  *See Nero*, 167

---

[1]  The Court notes that the jury was not asked to decide whether DMWH had acted in good faith.

[2]  The Court notes liquidated damages are not punitive in nature but are designed to compensate employees for the retention of their pay. *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000); *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir. 1999).

F.3d at 929;  *Singer v. City of Waco*, 324 F.3d 813, 822 (5th Cir. 2003); *see also Arban*, 345 F.3d at 408 (citing *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002); *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1996).  A defendant employer seeking to avoid the imposition of liquidated damages under the FLSA "faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA."  *Singer*, 324 F.3d at 823 (citations omitted).  Moreover, even if a defendant shows good faith and a reasonable belief its actions did not violate the FLMA, a district court may still award liquidated damages.  *See Nero*, 167 F.3d at 929.

In the case at bar, DMWH argues there is no evidence that it intentionally violated the FMLA or that it exhibited any discriminatory animus towards Firth regarding any sick leave.  Morever, the corporation contends, its corporate head, Don McGill, testified he did not consider Firth to be covered by the FMLA and Firth's termination had nothing to with his illness or leave.  Accordingly, DMWH asserts it acted in good faith and with reasonable grounds for believing it did not violate the FMLA.  In contrast, Firth argues the jury determined that Firth was covered by the FMLA and that McGill retaliated against him for taking sick leave.  Further, Firth avers

that McGill testified he did not think about the FMLA requirements before terminating Firth, and ignorance of the law is not enough to avoid liquidated damages.

The Court agrees with Firth. The jury concluded that DMWH retaliated against Firth in violation of the FMLA. In doing so, the jury necessarily found that the termination was based on Firth's sick leave and implicitly rejected McGill's contention that the decision to terminate was based on the flight performance of Firth's co-pilot. *See Arban*, 345 F.3d at 408. In its response, DMWH appears to attempt to relitigate the issues already decided by the jury. Additionally, DMWH avers it had no knowledge it violated any law in terminating Firth and did not believe Firth was an employee covered by the FMLA. However, a showing of good faith "requires more than ignorance of the prevailing law or uncertainty in its development." *Reich*, 121 F.3d at 71 (FLSA context).

To establish good faith, an employer should demonstrate that it took "active steps to ascertain the dictates" of the FMLA and attempted to comply with the statute. *Id*. The determination of whether an employer has sufficiently shown it acted in good faith includes an analysis of both whether an employer had a subjective intent to comply with the FMLA and whether

5

it acted objectively reasonable in its application of the FMLA.  *See Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 730 (7th Cir. 2004).  Stated another way, the subjective component of good faith involves an employer's "honest intention to ascertain what the [FMLA] requires and to act in accordance with it," and the objective aspect of good faith considers the employer's "reasonable grounds for believing its conduct comported with the [FMLA]." *Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 F. Appx. 183, 185-86 (11th Cir. 2005).

At trial in the instant matter, Don McGill testified he did not think about the FMLA requirements before terminating Firth.  Further, other than his own testimony that he had never fired anyone because they had taken medical leave, there was no evidence the corporation took any affirmative and reasonable steps to attempt to comply with the FMLA.  *Id.*; *see also Lee v. Coahoma County*, 937 F.2d 220, 227 (5th Cir. 1991) (affirming denial of liquidated damages where defendant, a county, sought the advice of counsel in establishing an FLSA-compliant compensation plan and consulted with the Department of Labor regarding the plan but whose sheriff did not properly implement that plan).  Consequently, the Court concludes that DMWH has not met its burden of showing both good faith and reasonable

6

grounds for believing it had complied with the FMLA in order to avoid liquidated damages. Thus, Firth's motion for liquidated damages in the amount of $96,916 plus interest is granted.

B. Reinstatement or Front Pay

Firth seeks either to be reinstated to his corporate pilot position or front pay in the amount of $40,000.[3] DMWH argues that reinstatement is not appropriate because the position no longer exists and even if it did, reinstatement would not be practical after such acrimonious litigation. Further, DMWH argues front pay should not be awarded because Firth failed to mitigate his damages, and awarding Firth both liquidated damages and front pay would result in a windfall. The Court will address reinstatement and front pay in turn.

Front pay is designed to compensate plaintiffs for their loss of future wages and benefits. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992). The United States Court of Appeals for the Fifth Circuit has repeatedly stated that reinstatement, if feasible, is preferred over front pay to remedy a discriminatory discharge. *Woodhouse v. Magnolia Hosp.*, 92 F.3d

---

[3] Firth reaches the $40,000 figure because the jury awarded lost wages that, when divided by the total number of months of time it considered, total about $40,000 annually. The Court notes that Firth offers no evidence or argument in support of his request for reinstatement or front pay.

248, 257 (5th Cir. 1996); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990). DMWH correctly argues Firth cannot be reinstated because the position no longer exists; DMWH no longer keeps a private pilot on staff but instead retains pilots on a contractual, as-needed basis. *See Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1255 (5th Cir. 1995). Moreover, Firth was a corporate pilot whose job involved mainly transporting corporation head Don McGill around the world. This litigation has been both protracted and antagonistic and would necessarily affect such an intimate working relationship. *See Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435 (5th Cir. 1985) (noting that "front pay may be particularly appropriate in lieu of reinstatement where discord and antagonism between the parties would render reinstatement ineffective"). Accordingly, the Court concludes reinstatement is not appropriate in this case.

The Court must next consider whether front pay should be awarded. "District courts 'must consider [a plaintiff's] failure to mitigate . . . damages in determining the extent to which, if at all, front pay is appropriate.'" *Giles v. General Elec. Co.*, 245 F.3d 474 (5th Cir. 2001) (quoting *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1470 (5th Cir. 1989)). In the case at bar, there is evidence that Firth did not reasonably mitigate his

damages for the 2005 year by pursuing an opportunity for a corporate piloting position with a charter company.    Moreover, "a substantial liquidated damages award may indicate that an additional award of front pay is inappropriate or excessive."  *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992).  The Court agrees with DMWH that an award of front pay would result in overcompensation.  *Id.*  Accordingly, Firth's motion for reinstatement or front pay is denied.

      C.  Interest, Attorneys' Fees and Costs

         1.  Interest

Firth seeks pre- and post-judgment interest on the jury award for lost wages.  Pursuant to 28 U.S.C. § 1961(b) (2000), post-judgment interest is calculated from the date of the entry of judgment.   The post-judgment interest rate for the week of March 27, 2006 to April 2, 2006 is 4.77%. Accordingly, the Court grants post-judgment interest on the judgment, including attorneys' fees, at the rate of 4.77%.  *See Curry v. Ensco Offshore Co.*, No. 01-40660, 54 Fed. Appx. 407 (5th Cir. 2002).

Additionally, the trial court has discretion to award Firth pre-judgment interest on his back pay award.  *Gloria v. Valley Grain Products, Inc.*, 72 F.3d 497, 499 (5th Cir. 1996); *Sellers v. Delgado Cmty. Coll.*, 839 F.2d

9

1132, 1149 (5th Cir. 1988). The purpose of pre-judgment interest is "to restore the plaintiff to the position [he] would have had but for the discrimination." *Dibler v. Metwest, Inc. d/b/a Damon/Metwest*, No. CA3:95-CV-1046-BC, 1997 WL 222910, at *4 (N.D. Tex. April 29, 1997). Therefore, the Court concludes Firth is also entitled to pre-judgment interest at a rate of 4.77%. *Id*.

## 2. Attorneys' Fees

As the prevailing party, Firth seeks attorneys' fees in the amount of $151,325. Title 42 U.S.C. § 2000e-5(k) provides that the court, "in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k) (2000). To determine the amount to be awarded, courts utilize the lodestar method, a multi-step process. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). First, "the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *Id*. at 324 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, the district court must determine a lodestar by

10

multiplying the reasonable hours by the reasonable hourly rates.  *Id*.  Finally, the district court can either accept the lodestar or adjust it upward or downward based upon the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 7171-19 (5th Cir. 1974).  *Kellstrom*, 50 F.3d at 329.  The Court will address each factor in turn.

District courts must determine whether the hours claimed were "reasonably expended."  *Id*. (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 933-34 (5th Cir. 1990)).  Courts should examine both whether the total number of hours claimed is reasonable and whether specific hours claimed were reasonably expended.  *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997).  Any hours not reasonably expended, excessive or duplicative should be excluded from consideration.  *Id*.; *see also Hensley*, 461 U.S. at 434; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

The burden is on the party seeking reimbursement to show that its hours are reasonable.  *Id*. at 437.  The fee applicant can meet this burden "only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement."  *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990).  Accordingly, the applicant's

documentation must be sufficient for a court to ensure the applicant has met this burden. *Id*. "In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Id*. A court may determine that an award of less hours is appropriate "if the documentation is *vague* or *incomplete*." *Kellstrom*, 50 F.3d at 324 (emphasis in original).

In the instant case, Plaintiff's lead counsel, Joseph Ahmad, seeks $127,025 in fees for his law firm, Ahmad, Zavitsanos and Anaipakos, P.C., and an additional $24,300 for attorney Howard Dulmage, Ahmad's co-counsel at trial. Ahmad states his firm expended a total of 559 hours on the case, and Dulmage worked 97.2 hours. Ahmad indicates that his firm's total number of hours has been reduced to eliminate any hours that were primarily clerical in nature, duplicative, unnecessary or not normally billed to clients. Furthermore, he does not seek reimbursement for any of his own participation until the trial preparation stage, opting instead to bill only for the work of one associate and one paralegal until trial preparations began. Both Ahmad and Dulmage support their requests for attorneys' fees with

12

detailed billing records.   DMWH asserts the number of hours charged by Ahmad and Dulmage is excessive.   Specifically, it questions the request for reimbursement for paralegal work, which DMWH states was mostly clerical in nature, the necessity of having two paralegals in court throughout the trial, and certain billing entries.   Additionally, DMWH challenges the need for Dulmage to co-chair the trial.

In response, Ahmad states he seeks reimbursement only for paralegal hours spent on primarily legal tasks, such as drafting legal documents and assisting with documents and equipment at trial.[4]   A review of the billing records indicates Ahmad is correct in his assertion that the paralegal work included in his request was primarily legal, including drafting legal documents and assisting at trial.   *See generally James v. City of Dallas*, No. Civ.A. 3:98CV0436R, 2005 WL 954999, at *4 (N.D. Tex. April 25, 2005) (discussing the practice of billing for paralegal time).   The request for paralegal time is reasonable for such services and will be included in the calculation of fees.   *See Alter Fin. Corp. v. Citizens & S. Int'l Bank of New Orleans*, 817 F.2d 349, 350 (5th Cir. 1987); *Roberson v. Brassell*, 29 F. Supp. 2d 346, 353 (S.D. Tex. 1998).   Furthermore, the Court determines the

---

[4]   The request is for 186.80 hours of paralegal time.

13

request for Dulmage's time is reasonable.  Dulmage, who also is a licensed pilot, prepared Firth for his examinations and was responsible for the cross examinations of any pilots called to testify by DMWH.  Accordingly, his time will be included in the calculation of fees.[5]

The Court next reviews the billing records, including those entries specifically challenged by DMWH.  After carefully reviewing all of the billing record entries, the Court finds all of the hours to be reasonably expended on the litigation and not excessive for the type and length of litigation involved.  Further, with regard to the summary judgment response and surreply, following DMWH's objection to the billing records, Ahmad voluntarily reduced the time allotted to this task.[6]  Accordingly, the Court finds these hours reasonably expended on the litigation.

Next, the Court must determine an appropriate hourly billing rate. *Kellstrom*, 50 F.3d at 327.  Ahmad submits his hourly rate is $355 and requests hourly billing rates of $185 an hour for an associate, and $125 and

---

[5]  The Court notes that DMWH had three lawyers at trial while Firth seeks fees for two lawyers and two paralegals.

[6]  Indeed, the billing records indicate there were several other lawyers and paralegals who worked on this case for which Ahmad's firm seeks no compensation.

14

$95 an hour for the assistance of two paralegals.[7]   Dulmage seeks compensation based on a billing rate of $250 an hour.   Plaintiffs contend these amounts are well within the prevailing hourly rates charged by other attorneys and paralegals in the Houston community of similar experience for this type of litigation.   However, Defendant contests this fee application.   In particular, DMWH challenges that Ahmad's $355 per hour rate is not properly supported.

The fee applicant bears the burden of producing evidence that the requested rate is appropriate within the Houston market.   *See Deltatech Constr., LLC v. The Sherwin-Williams Co.*, No. Civ.A.04-2890, 2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005).   "Reasonable hourly rates are determined by looking to the prevailing market rates in the relevant legal community."   *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002) (citing *Watkins*, 7 F.3d at 458-59).   The applicant's evidence to support an hourly rate "must [] speak to the rates actually billed and paid in similar lawsuits."   *Deltatech Construction*, 2005 WL 3542906, at *3; *see also League of United Latin Am. Citizens #4552*, 119 F.3d at 1234 (noting that "[t]he hourly fee award must be supported by the record . . .").

---

[7]   Ahmad states typically his billing rate ranges between $355 and $375 per hour.

As proof that his request is reasonable, Ahmad provides an affidavit detailing his extensive employment law experience.[8]  For example, after a two-year federal clerkship with a district court, Ahmad began practicing law in Texas in 1989.  Ahmad's practice has focused on employment law matters since July 1993, he is board certified in labor and employment law, and he has spoken and written extensively on employment law issues.   Finally, Ahmad submits recent attorneys' fees awards he has obtained, including a $315 an hour rate approved by this Court two years ago.  DMWH objects to the $40 hourly increase, arguing Ahmad has no evidence to support it.  The Court disagrees, finding Ahmad's hourly billing rate to be reasonable and supportable based on the Houston market and his experience.  Additionally, the Court finds the other hourly rates for Dulmage, Ahmad's associate and two paralegals to be generally within a range that is customary for their experience in Houston.

Once the appropriate rate is determined, the court must calculate the lodestar "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work."  *Heidtman v.*

---

[8]  Also included in Ahmad's affidavit is the background of Gigi Cox, a paralegal whose billing rate is $125 an hour.  The Court finds this request to be reasonable in light of her experience, the tasks she performed on the case, and the local market.

*County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).   After a court determines the lodestar figure, it should use the *Johnson* factors to determine if an increase or a decrease is warranted.  *Singer*, 324 F.3d at 829.  There is a strong presumption that the lodestar award is the reasonable fee in a case. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).   Accordingly, the Court calculates the lodestar in the instant case as $151,325 ($127,025 for Ahmad and $24,300 for Dulmage).

The third part of the fee analysis requires district courts to apply the twelve *Johnson* factors.   *See Johnson*, 488 F.2d at 717-19.   The Court considers the following:

1.  the time and labor required;

2.  the novelty and difficulty of the legal questions;

3.  the skill required to perform the legal service properly;

4.  the preclusion of other employment by the attorney due to the acceptance of this case;

5.  the customary fee for similar work in the community;

6.  whether the fee is fixed or contingent;

7.  time limitations imposed by the client or circumstances;

8.  the amount involved and results obtained;

9.      the experience, reputation, and ability of the attorneys;

10.     the "undesirability" of the case;

11.     the nature and length of the professional relationship with the client; and

12.     awards in similar cases.

*Id*. In applying these factors, a district court must ensure that a fee award does not provide a windfall to the plaintiff. *See Kellstrom*, 50 F.3d at 328.

Here, Plaintiff's counsel requests the Court to adopt the lodestar figure based on the time it took to prosecute this case, the fact that it involved several novel issues of law, Ahmad's and Dulmage's preclusion of other employment for a week and a half for trial preparation and trial time, the fact that Ahmad agreed to be paid only what the Court awards in attorneys' fees and because the rate would be similar to those Ahmad has obtained in other employment law cases.  In contrast, Defendant's counsel argues this case did not involve novel or complex issues of law, and there is no evidence that this case precluded other employment.  After reviewing the *Johnson* factors, the Court declines to adjust the lodestar figure from the previous calculation and determines that the above-calculated fee is reasonable and appropriate pursuant to controlling case law.

*See, e.g., Deltatech Construction*, 2005 WL 3542903, at *5. Accordingly, the Court grants Firth's motion for attorneys' fees in the amount of $151,325.

      3.  Costs

      Firth requests the following costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and Local Rule 54.2 of the Southern District of Texas: fees of the clerk in the amount of $150.00, fees for service of summonses and subpoenas in the amount of $380.00, fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case in the amount of $1,137.06, fees for witnesses in the amount of $160.00, fees for exemplification and copies of papers necessarily obtained for use in the case in the amount of $956.20, and other costs in the amount of $3,610.04.[9]

      Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs "to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). Furthermore, the Fifth Circuit strongly presumes that courts will award costs to the prevailing party. *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992) (citing *Sheets v. Yamaha Motors Corp. U.S.A.*, 891 F.2d 533, 539 (5th Cir. 1990)).

      Title 28 U.S.C. § 1920 identifies recoverable costs:

---

[9] Plaintiff's requested costs total $6,396.30.

> A judge or clerk of any court of the United States may tax as costs the following:(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2000).  A court may decline to award the costs listed in the statute, but may not award costs omitted from the list.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).

Before a court taxes a bill of costs, the party claiming the cost shall attach an affidavit that such amount is correct, was necessarily incurred during the case, and the services which gave rise to the cost were actually and necessarily performed.  28 U.S.C. § 1924 (2000).  Costs of original depositions and copies are recoverable so long as shown to be necessarily obtained for use in the case.  *See* 28 U.S.C. §§ 1920 (2)-(4); *see also Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991).  "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court."  *Fogleman*, 920 F.2d at 285-86.  To assist the court, the prevailing party should provide some demonstration that the costs necessarily result from the litigation.  *Id*. at 286.  If a party does not set out costs with sufficient particularity, a court

20

may disallow them.  *See Davis v. Commercial Union Ins. Co.*, 892 F.2d 378, 385 (5th Cir. 1990).

In the instant case, Plaintiff Leonard Firth filed his request for bill of costs on January 30, 2006, and submitted the appropriate affidavit.  Defendant DMWH fails to object to Plaintiff's bill of costs and supporting affidavit. However, the Court still must determine whether the costs requested are allowable under 28 U.S.C. § 1920.

a.  *Prevailing Party*.  To determine who is a prevailing party, courts must look to the case as a whole.  *Fogleman*, 920 F.2d at 285.  Successful recovery on every issue is not required in order to be deemed a prevailing party. *Id*.  Here, a jury determined that DMWH had retaliated against Firth because he took protected medical leave.  As such, Firth may be awarded certain costs. FED. R. CIV. P. 54(d)(1).

b.  *Filing fee, summons and subpoena, and witness fees*. Firth requests reimbursement for his filing fee, summonses and subpoenas issued in this litigation, and $40 a day for each day of a witness's trial attendance.  The total for these costs is $690.  Firth provides detailed receipts for all three sets of expenses.  The Court concludes all three items are recoverable pursuant to §

21

1920 as fees necessarily incurred in this litigation.  Thus, Firth's requests as to these items is granted.

      c.   *Deposition costs*.   Plaintiff requests an award of $1,137.06 for deposition expenses in this case.  Section 1920 allows for the recovery of routine expenses incurred in trial preparation, which necessarily includes taking depositions so long the expenses were both necessary and reasonable.  *See* 28 U.S.C. §§ 1920 (2)-(4); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993).  Deposition costs may be recovered, even if the deposition was not used at a trial.  *See W. Wind Africa Line, Ltd. v. Corpus Christi Marine Servs., Co.*, 834 F.2d 1232, 1237-38 (5th Cir. 1988).  The actual use of a deposition in the case or at pretrial proceedings satisfies the statutory requirement that it be necessary.  *Id.*

    In the instant case, Plaintiff represents that these transcripts were necessarily obtained for other phases of the litigation and in anticipation of trial. Moreover, the Court observed certain portions being used at trial.  Additionally, the Fifth Circuit only requires a showing of "necessarily obtained" for use in a case. *See Fogleman*, 920 F.2d at 286.  In its discretion, the Court determines that Plaintiff's requested deposition costs are proper.   Thus, the request for deposition costs is granted.

4.   *Photocopies*.  Firth also requests the sum of $956.20 for charges for copies of papers necessarily obtained for use in the case.  So long as the copies are for papers necessarily obtained for use in a case, the costs are recoverable under § 1920.  *See Fogleman*, 920 F.2d at 286; *Studiengesellschaft Kohle mbH v. Eastman Kodak* Co., 713 F.2d 128, 133 (5th Cir. 1983).  The party seeking reimbursement must therefore offer proof of such necessity. *Fogleman*, 920 F.2d at 286.  "While [the court] certainly do[es] not expect a prevailing party to identify every xerox copy made for use in the course of legal proceedings, [it] does require some demonstration that reproduction costs necessarily result from that litigation." *Id*.

In the case at bar, Firth represents his total copy costs as $956.20.  He demonstrated through detailed records that these reproduction and printing costs necessarily result from this litigation.  Because this Court is able to determine that these charges were reasonably necessary for Firth's use in pre-trial and trial proceedings and are taxable under § 1920, Firth's request for copy charges is granted.

5.   *Other costs*.  Firth requests recovery of $3,610.04 in other costs, which ostensibly includes both the rental of equipment for trial and a mediation fee.   Although DMWH neither objected nor filed any written

23

opposition to this charge, the Court determines that these costs are not specifically provided for by the statute, and as such, declines to award this amount under § 1920.  *See, e.g. Jensen v. Lawler*, 338 F. Supp. 2d 739, 747 (S.D. Tex. 2004) (declining to award mediation costs).   Therefore, Firth's request for $3,610.04 in other costs is denied.

CONCLUSION

Accordingly, the Court hereby

ORDERS that Plaintiff's Motion for Award of Liquidated Damages (Instrument No. 82) is GRANTED.   Plaintiff Leonard Firth shall recover $96,916 plus interest in liquidated damages from Defendant DMWH.

ORDERS that Plaintiff's Motion for Reinstatement, or, in the alternative, Front Pay (Instrument No. 83) is DENIED.  The Court further

ORDERS that Plaintiff Leonard Firth shall recover attorneys' fees in the amount of $151,325 from Defendant DMWH.

ORDERS that as prevailing party, Plaintiff Leonard Firth is entitled to recover costs in the amount of $2,786.26 from Defendant DMWH.

ORDERS that the pre-judgment and post-judgment interest rate is 4.77%.

SIGNED at Houston, Texas, on this 28th day of March, 2006.


_____

DAVID HITTNER
United States District Judge